**In re WELLNX MARKETING AND SALES PRACTICES LITIGATION.**

**MDL No. 07–md–1861.**

United States District Court, D. Massachusetts.

Dec. 11, 2009.

44

Leah A. Ayala, John R. Bailey, Bailey & Merrill, Las Vegas, NV, David A. Barry,

Samuel M. Furgang, Andrew R. Levin, Sugarman, Rogers, Barshak & Cohen, PC, Boston, MA, Douglas S. Lyons, Marsha Lyons, Lyons & Farrar, PA, Tallahassee, FL, Dennis L. Kennedy, Kimberly R. McGhee, Bailey Kennedy, Las Vegas, NV, H. Christian Bode, Natalie D. Collins, Bode & Collins, PLC, Scottsdale, AZ, Rodney E. Loomer, Michael J. Patton, Wallace S. Squibb, Wallace S. Squibb, Turner, Reid, Duncan, Loomer & Patton, Springfield, PC, MO, Amelia G. Helmick, Wade H. Tomlinson, Wade H. Tomlinson, Pope, McGlamry, Kilpatrick, Morrison & Norwood LLP, Alan G. Snipes, Columbus, GA, R. Timothy Morrison, Pope, McGlamry, Kilpatrick, Morrison & Norwood LLP, Corey M. Stern, Atlanta, GA, Craig S. Bloomgarden, Robert A. Zeavin, Manatt, Phelps & Phillips LLP, Los Angeles, CA, Gerald L. Greene, F. Allen Lewis, Greene & Lewis, Pineville, KY, Gary J. Rickner, Gary J. Rickner, Ward & Smith, P.A., New Bern, NC, Steven B. Tannenbaum, Steven B. Tannenbaum, Horowitz, Tannenbaum & Silver, P.C., Lake Success, NY, Amy B. Briggs, Steefel, Levitt & Weiss, San Francisco, CA, Clark H. Cole, Armstrong Teasdale LLP, St. Louis, MO, Michael C. Costello, Ferriter & Costello, Cambridge, MA, Bruce D. Fox, Fox and Farley, Clinton, TN, Craig Hilliard, Stark & Stark, Lawrenceville, NJ, Theresa L.F. Levings, Elizabeth D. Badger, Badger & Levings, Kansas City, MO, John E. Macdonald, Stark & Stark, PC, Princeton, NJ, William J. Murphy, Murphy & Shaffer, LLC, Baltimore, MD, for Consolidated Plaintiffs.

J. Douglas Baldridge, Collier, Shannon, Rill & Scott, Washington, DC, Robert J. Behling, Dapper Baldasare Benson Behling & Kane, Pittsburgh, PA, Edward P. Boyle, Michael C. Hartmere, Venable LLP, New York, NY, Robert C. Brand, Jr., William L. Tucker, Columbus, GA, Spencer H. Gunnerson, Mark M. Jones, Harrison, Kemp, Jones & Coulthard, LLP, Las Vegas, NV, Charles W. Hatfield, Stinson, Morrison & Hecker, Jefferson City, MO, Melinda Meador, Bass, Berry & Sims, Knoxville, TN, Shane C. Mecham, Stinson, Morrison & Hecker, LLP, Kansas City, MO, Eric Neyman, McCarter & English, LLP, Boston, MA, M. Elizabeth Nillen, Stinson, Morrsison & Hecker, LLP, Phoenix, AZ, Jon A. Santangelo, Stinson & Morrison, St. Louis, MO, Jeffrey M. Tanzer, Los Angeles, CA, for Consolidated Defendants.

Jennifer L. Barnett, Marcus, Errico, Emmer & Brooks, P.C., Braintree, MA, for ThirdParty Plaintiffs.

Christopher A. Bauer, Paul F. Rafferty, Jones Day, Irvine, CA, Darrell Mook, Donovan Hatem, LLP, Amy M. McCallen, Alan K. Posner, Rubin & Rudman, LLP, Boston, MA, Nhan T. Vu, Robinson Pharma, Inc., Santa Ana, CA, for Defendants.

Jessica Block, Block & Roos LLP, Boston, MA, Benjamin G. Chew, Edward G. Gehres, III, Patton & Boggs, LLP, Washington, DC, for ThirdParty Defendants.

Karen S. Crawford, Riker, Danzig, Scherer, Hyland, & Perretti, LLP, Morristown, NJ, for ThirdParty Plaintiffs/Defendants.

Kelly S. Crawford, Anne M. Patterson, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, Douglas A. Troyer, Marcus, Errico, Emmer & Brooks, Braintree, MA, for Defendants/ThirdParty Plaintiffs/Consolidated Defendants.

Thomas B.K. Ringe, III, Duane Morris LLP, Philadelphia, PA, for Plaintiffs/Consolidated Plaintiffs.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

STEARNS, District Judge.

In these sixteen civil cases, plaintiffs assert fraud-based claims against the mov-

ing defendants WellNx Life Sciences, Inc. (WellNx), Swiss Caps USA, Inc. (Swiss Caps), and Robinson Pharma, Inc. (RPI), the inventors, retailers, and manufacturers of the "weight loss" products "Slimquick—the Female Fat Burner" (Slimquick), "NV—Rapid Weight—Loss Beauty Pill" (NV) and Liquid Hoodia.[1] Defendants move to dismiss the bulk of plaintiffs' claims as insufficiently pled. The court heard oral argument on the motions on June 11, 2009.

## BACKGROUND

The cases at the core of the litigation were filed in federal courts in Maryland, Massachusetts, Nevada, and New Jersey.[2] The lead plaintiffs are disappointed consumers who spent an average of $25 for the purchase of five-day supplies of WellNx products "guaranteed" to induce weight loss and enhance beauty.[3] None of the plaintiffs who used the products lost weight or believed themselves to be more beautiful as a result.

Plaintiffs' claims, for the most part, are directed to the allegedly fraudulent marketing of Slimquick and NV, although the New Jersey Amended Complaint makes similar allegations about Liquid Hoodia.[4] WellNx, the Canadian company that claims to have "invented" SlimQuick, NV, and Liquid Hoodia, styles itself as a "developer" of dietary supplements for "sports nutrition, weight loss, and 'general wellness.'" Plaintiffs maintain that brothers Derek and Brad Woodgate, the Co–Chief Executive Officers of WellNx, falsely represented the ingredients of WellNx products and fabricated consumer "testimonials" touting Slimquick.

Plaintiffs rely on a sworn statement from Craig Stevenson, Well–Nx's former Director of Marketing, alleging that the

---

1. The cases were transferred to the District of Massachusetts by the Judicial Panel on Multidistrict Litigation (MDL) on August 31, 2007, 505 F.Supp.2d 1380 (Jud.Pan.Mult.Lit.2007), for consolidated pretrial proceedings.

2. For purposes of these motions, references to the Amended Complaints are to those filed on July 9, 2008, in *Weeks v. NxCare, Inc.* (Md. Amended Complaint); *Cassidy v. NxCare, Inc.* (Mass. Amended Complaint); *Daniel v. NxCare, Inc.* (Nev. Amended Complaint); and *Cathcart v. NxCare, Inc.* (N.J. Amended Complaint). Generic references to the various claims are directed to those found in the Massachusetts Amended Complaint. These claims are as follows: Count I—Violations of Mass. Gen. Laws ch. 93A, the Consumer Fraud Act (WellNx, individual, and manufacturing defendants); Count II—Fraud (all defendants); Count III—Civil Conspiracy (individual defendants); Count IV—Breach of Express Warranties (WellNx defendants); Count V—Breach of Implied Warranty of Merchantability (WellNx defendants); Count VI—Breach of Implied Warranty of Fitness (WellNx defendants); Count VII—Aiding and Abetting (manufacturing defendants); Count VIII—Civil Conspiracy (all de-

fendants); Count IX—Negligence (all defendants); and Count XII—Injunctive Relief (all defendants). Only the New Jersey and Nevada Amended Complaints contain causes of action for piercing the corporate veil.

3. In the Maryland case, plaintiff Dana Weeks purchased Slimquick from a Wal–Mart in Maryland in February of 2006. The Massachusetts plaintiff, Robyn Cassidy, purchased Slimquick from a Walgreens in Tewksbury, Massachusetts, in the summer of 2006. Olivia Daniel, the Nevada plaintiff, purchased Slimquick from a Las Vegas Wal–Mart on January 1, 2007. The plaintiff in the New Jersey action, Tisha Cathcart, purchased Liquid Hoodia and Slimquick at a Rite Aid Pharmacy, presumably in New Jersey. *See* Md. Amended Complaint ¶ 157; Mass. Amended Complaint ¶ 138; Nev. Amended Complaint ¶ 169; N.J. Amended Complaint ¶ 175.

4. Liquid Hoodia is extracted from a succulent plant indigenous to South Africa. "Some commentators have said that ingestion of this [liquified] form of hoodia will suppress hunger and lead to weight loss." N.J. Amended Complaint ¶ 81.

Woodgates knew that the products did not contain the advertised ingredients. They also offer the affidavit of Dr. Lawrence Walker, the Director of the National Center for Natural Products Research, whose tests of samples of Slimquick, NV, and Liquid Hoodia, found that they "frequently did not contain green tea and/or Hoodia at all, or, if present, the amount of the ingredients was frequently less than claimed on the labeling of these products."

With respect to the testimonials, plaintiffs rely on the affidavit of Scott Welch, a former WellNx officer (who was a codefendant until his voluntary dismissal by plaintiffs on November 2, 2009).[5] Welch states that it was no secret that the Slimquick testimonials had been made up from whole cloth by Derek Woodgate. For example, Nadine Wall, one of Slimquick's "before-and-after" successes, never used Slimquick, while another, Kerrie Lee Brown, a "successful" dieter, never lost weight as a result.[6]

In the Amended Complaints, plaintiffs allege that the defendants—the Woodgates, Global Health Technologies, Inc. (Global Health),[7] NxCare, Inc., and NxLabs, Inc., made "statements or omissions of material fact [that] . . . were false, were known by the defendants to be false

(or were made on an insufficient basis of information), were made with the intent to induce the members of the plaintiff class to rely upon them, and were justifiably relied upon by the members of the plaintiff class to their detriment." Amended Complaints ¶ 98. The Amended Complaints also allege that "[t]he Manufacturing Defendants had knowledge that certain ingredients were to be included in [the Products] and negligently and/or intentionally failed to include certain ingredients in [the Products] prior to ultimate sale of said products to the plaintiff class." Md. Amended Complaint ¶ 118; Mass. Amended Complaint ¶ 119; Nev. Amended Complaint ¶ 145; N.J. Amended Complaint ¶ 154.

WellNx seeks dismissal of certain claims against it; Swiss Caps and RPI seek dismissal of all claims. Swiss Caps is a Florida corporation that manufactured Liquid Hoodia for WellNx between January 1, 2007, and August 31, 2007 ("but perhaps to the present"). RPI is a California corporation that manufactured NV for WellNx from sometime in 2006 through August 31, 2007, and Liquid Hoodia from at least March 1, 2007, through at least August 31, 2007 ("but likely to the present time."). Amended Complaints ¶ 11(a).[8] The "manu-

---

5. Plaintiffs frequently refer to the Woodgates as the "individual defendants."

6. The Amended Complaint alleges "that defendants made false weight-loss claims to all purchasers on the packaging on all versions of the weight-loss product." Opposition Memorandum, at 1. See Amended Complaints ¶ 70. Plaintiffs maintain that the products are not the "rapid fat burners" that they are portrayed to be, and that there is no scientific basis for the claim that they promote weight loss.

7. Global Health Technologies, Inc., is a Canadian holding company that owns 100 percent of the shares of WellNx. Global Health appears to be a phantom corporate creature with only a juridical existence. Global Health

was dismissed by the court from the MDL action on May 29, 2009 2009 WL 1505507, for want of personal jurisdiction.

8. Defendant Fortius Canada, Inc., is alleged to have manufactured Slimquick between 2004 and August of 2007, and to have manufactured NV between January and August of 2007. Garden State Nutritionals is alleged to have manufactured NV between January and March of 2007. Fortius and Garden State are named in the Massachusetts, New Jersey, Nevada, and Maryland Amended Complaints. In the Amended Complaints and the opposition memoranda, plaintiffs refer to RPI, Swiss Caps, Garden State, and Fortius collectively as the "manufacturing defendants." Fortius was defaulted on June 8, 2009, and Garden State has not moved for dismissal.

facturing defendants" base their motions to dismiss on the assertion that plaintiffs have failed to allege that any of the named plaintiffs relied on the product labels in deciding to make a WellNx purchase. Similarly, WellNx contends that the Amended Complaints do not allege reliance or causation, which are essential elements of both the common-law fraud and the statutory consumer fraud claims. Further, defendants note that none of the named plaintiffs is alleged to have purchased NV, while only Tisha Cathcart, the New Jersey plaintiff, is alleged to have purchased Liquid Hoodia. Finally, WellNx argues that as plaintiffs allege only out-of-pocket damages, the tort claims are barred by the "economic loss doctrine."[9]

## DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). *See also Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007).

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (internal citations omitted). *See also Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (dismissal for failure to state a claim will be appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.").

*Swiss Caps USA*

Swiss Caps is named as a defendant in only the New Jersey Complaint. Swiss Caps is alleged to have manufactured Liquid Hoodia between January and August of 2007 ("but likely to the present time"). Plaintiff Tisha Cathcart purchased one bottle (50 "gels") of Liquid Hoodia and two bottles of Slimquick at a New Jersey Rite Aid Pharmacy. N.J. Amended Complaint ¶ 178. The only stated ingredient in Liquid Hoodia is 500 mg of "pure South African Hoodia [g]ordonii (ariel stem)." *Id.* at ¶ 59. Cathcart reports that her purchase of the product "did not result in weight loss or enhanced beauty." She states that an analytical laboratory determined that none of ten bottles of Liquid Hoodia that she submitted for testing contained Hoodia gordonii as an ingredient.[10] *Id.* ¶ 62.

---

9. At the hearing on these motions to dismiss, attorney Bailey Kennedy voluntarily dismissed plaintiffs' defective product and defective design claims. Kennedy explained that he was dismissing these counts from the four "bellwether" Amended Complaints as "there has only been economic damages suffered [and] that the claim[s are] not viable." Tr. at 4. Kennedy also agreed that prayers for injunctive relief and corporate veil-piercing, as well as claims for punitive damages, are not usually pled as separate causes of action, although he noted that under Nevada law such pleading is required. *Id.* at 44–45.

10. The N.J. Amended Complaint does not specify when or where or by whom these ten bottles were purchased.

Based on this alleged deception, Cathcart asserts claims against Swiss Caps for consumer fraud (Count I),[11] common-law fraud (Count III), aiding and abetting (Count X), civil conspiracy (Count XI), and negligence (Count XII). She also seeks punitive damages (Count XIII), and injunctive relief (Count XIV). Swiss Caps moves to dismiss all of the claims for failure to satisfy the requirements of Fed. R.Civ.P. 9(b) (circumstances constituting fraud must be pled with "particularity"). Specifically, Swiss Caps alleges that Cathcart has not pleaded reliance, causation, or physical or property damage.[12]

Under New Jersey law, common-law fraud requires proof of "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521 (1981). To state a claim for fraud by omission, a plaintiff is required to show that: (1) a defendant had a duty to disclose information to the plaintiff; (2) the information was material; (3) the plaintiff could not readily have learned of the information without defendant disclosing it; (4) the defendant intentionally withheld, altered, or destroyed the information; and (5) the plaintiff suffered harm by relying on the non-disclosure.[13] *See Steele v. Depuy Orthopaedics, Inc.*, 295 F.Supp.2d 439, 456 (D.N.J.2003). The Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8–1, also prohibits material misrepresentations or omissions made with the intent to induce reliance.

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, de-

11. Cathcart asserts that the WellNx defendants and the manufacturing defendants violated the following state consumer protection statutes (sixteen in total): New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8–1, et seq.; Arizona Consumer Fraud Act, Ariz.Rev. Stat. 44–1522; California Unfair Competition Law, Cal. Bus. & Prof. § 17200; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.; Georgia Uniform Deceptive Trade Practices Act, Ga.Code Ann. § 10–1–370, et seq.; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, et seq.; Kansas Consumer Protection Act, Kan. Stat. § 50–619; Kentucky Consumer Protection Act, Ky.Rev.Stat. Ann. § 367.110, et seq.; Maryland Consumer Protection Act, Md.Code Ann., Com. Law § 13–101, et seq.; Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A; Missouri Merchandising Practices Act, Mo.Rev.Stat. § 407.010, et seq.; Nevada Deceptive Trade Practices Act, Nev.Rev. Stat. § 598.0963; New York State Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349; North Carolina Unfair and Deceptive Trade Practices Act, 350 N.C. Gen.Stat. § 75–1.1; Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. Ann. § 201–1, et seq.; and the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–25–901, et seq.

12. As indicated previously, the manufacturing defect claims have been withdrawn. The conspiracy and aiding and abetting claims and the prayers for special relief depend on proof of one or more of the three fraud-related claims.

13. A claim of fraud by omission is subject to the same Rule 9(b) pleading requirements as is a claim of affirmative deception. *Millman v. Subaru of Am., Inc.*, 2008 WL 623032, at *3 (D.N.J. Mar. 6, 2008).

ceived or damaged thereby, is declared to be an unlawful practice. . . .

*Id.* at § 56:8–2. The statute requires a showing of: (1) unlawful conduct by a defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's quantifiable loss. *See Dabush v. Mercedes–Benz USA, LLC*, 378 N.J.Super. 105, 114, 874 A.2d 1110 (App.Div.2005), citing *New Jersey Citizen Action v. Schering–Plough Corp.*, 367 N.J.Super. 8, 12–13, 842 A.2d 174 (App.Div.2003).

With respect to Liquid Hoodia (the product manufactured by Swiss Caps), Cathcart identifies nine misleading statements allegedly made by WellNx and the Woodgates. Swiss Caps points out that none of these statements are attributed directly or indirectly to it (or for that matter, to any of the other manufacturing defendants). *Id.* ¶ 82(a)-(I). Nor is there any allegation that the statements were made with the encouragement or condonation of Swiss Caps or any of the other manufacturing defendants.

Alternatively, Cathcart asserts that Swiss Caps is responsible for the false labeling of Liquid Hoodia, more specifically that Swiss Caps manufactured Liquid Hoodia "which did not include ingredients which were listed on the packaging. . . . [They] had knowledge that certain ingredients were to be included . . . and negligently and/or intentionally failed to include certain ingredients . . . prior to their ultimate sale." N.J. Amended Complaint ¶¶ 153–154.[14]

■ Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir.2003). As the Third Circuit Court of Appeals noted in *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 882 (3d Cir.2000) (a class action securities case), it is difficult to envision circumstances in which a plaintiff could obtain information about the role a defendant like Swiss Caps played in aiding and abetting a false representation without discovery. In the absence of a factually developed record, it is impossible to say definitively what Swiss Caps knew or should have known about the false labeling of Liquid Hoodia.

Swiss Caps, however, makes an additional argument—that Cathcart has failed to plead a causal link between the alleged labeling misrepresentations and her resulting harm (a waste of money).[15] Cathcart

14. While Cathcart accuses Swiss Caps and the other manufacturing defendants of representing that Slimquick and NV contained green tea as an active ingredient when they knew (or should have known) that they did not, Swiss Caps is not alleged to have been involved in the manufacture of any WellNx product other than Liquid Hoodia. Cathcart further alleges that the labels on the bottles of Liquid Hoodia falsely claimed that the ingredients "would result in significant weight loss and that such weight loss would be rapid," *id.* ¶ 102, when Swiss Caps knew that there was no scientific support for the claim. *See* N.J. Amended Complaint ¶¶ 69, 101–102.

15. NxCare's counsel Edward Boyle stated at the hearing that "[o]n the Liquid Hoodia point, everybody was deceived by a supplier. . . . Stella Labs sold something that they said was genuine South African Hoodia gordonii to everybody—to many participants in this market. They paid premium prices for this product and they used it in the products and it went out into the marketplace, and now it turns out that this was all a scheme. And we were defrauded just like everybody

counters that because Liquid Hoodia is a "single-purpose" product, the causal link is self-evident. She also argues that a pleading of reliance is superfluous as it is undisputed that the only reason that she bought Liquid Hoodia was to lose weight. Again, at this stage of the pleadings, Cathcart adequately alleges "a claim to relief that is plausible on its face."

■ There is one remaining issue. It is a well-settled rule in most jurisdictions (including New Jersey) that purely economic losses are not recoverable in tort without a showing of personal injury or damage to property.[16] *See Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 632, 695 A.2d 264 (1997), citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) ("[W]hen the harm suffered is to the product itself, unaccompanied by personal injury or property damage, . . . principles of contract, rather than tort law, are better suited to resolve the purchaser's claim."). But there is a complicating factor. "While some states do not apply the economic loss doctrine in cases where the tort is intentional, New Jersey's . . . highest court has [not] ruled on whether the economic loss doctrine applies to fraud claims." *Shapiro v. Barnea*, 2006 WL 3780647, at *3 (D.N.J. Dec. 21, 2006). Federal district courts in New Jersey are generally of the view that under New Jersey law the economic loss doctrine bars fraud-based claims sounding in contract. *See Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F.Supp.2d 521, 528 (D.N.J. 1998). In *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 385 (D.N.J.2004), the district court made note of dicta in New Jersey Supreme Court opinions that contract remedies are "best suited" to resolve claims of economic loss, in either a consumer or a commercial context.

The Third Circuit Court of Appeals, for its part, has declined to predict whether the New Jersey Supreme Court would view the economic loss doctrine as an absolute bar to a fraud claim based on the same set of facts as a breach of contract claim. *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144 (3d Cir.2001) ("The New Jersey Supreme Court still has not decided the issue. We will avoid predicting New Jersey law by deciding the fraud issue on its merits, as we did in *Vanguard.*").[17] But see *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 219 F.Supp.2d 600, 608 (D.N.J.2002) ("[T]he contract between the parties does not explicitly limit the remedies available for breach. Thus, allowing [plaintiff] to pursue a tort remedy would not contravene the intent of the parties.").[18]

---

else. That will all come out *in discovery*, your Honor." Tr. at 49–50 (emphasis added).

**16.** While plaintiffs allege that NV contained "synthetic caffeine" which is "potentially dangerous for use by those with cardiac histories or conditions," none of the plaintiffs claim to have cardiac problems, and none are alleged to have purchased NV.

**17.** The Third Circuit in *Vanguard* had noted that: "[t]he continuing validity of fraud claims in cases involving frustrated economic expectations under New Jersey law is very complex and troublesome." *Vanguard Telecomm. Inc. v. S. New England Tel. Co.*, 900 F.2d 645, 653 (3d Cir.1990).

**18.** Another interesting twist is provided by the New Jersey Product Liability Act (PLA), which the Legislature has defined as the exclusive remedy for harm caused by drugs or products purchased for personal use. *See* N.J. Stat. Ann. § 2A:58C–1(b)(3). "Harm" is defined in the PLA as: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C–1(b)(2).

In the absence of any definitive statement from the New Jersey Supreme Court recognizing an exception to the economic loss doctrine for intentional conduct, this court is constrained to find that Cathcart's common-law fraud claims are barred.[19] Cathcart's negligence claim, which seeks out-of-pocket damages for defendants' "fail[ure] to procure and/or obtain the proper amounts of ingredients in Slimquick, NV and Liquid Hoodia and negligent fail[ure] to properly test the key ingredients [in those products]," is similarly barred. *See* N.J. Amended Complaint ¶¶ 161–162.

Cathcart's CFA claims stand on different footing. The New Jersey Supreme Court construes the CFA "liberally in favor of consumers." *Czar, Inc. v. Heath*, 198 N.J. 195, 201, 966 A.2d 1008 (2009) (the CFA is broad remedial legislation intended to afford strong protection to consumers); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15, 647 A.2d 454 (1994) (same). The CFA, however, allows recovery for only "ascertainable" economic loss. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 612–613, 691 A.2d 350 (1997); *Cole v. Laughrey Funeral Home*, 376 N.J.Super. 135, 144, 869 A.2d 457 (App.Div.2005). "Ascertainable loss" under the CFA means a loss "of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act...." N.J. Stat. Ann. § 56:8–19. An "ascertainable loss [occurs] when a consumer receives less than what was prom-

ised." *Hoffman v. Asseenontv.Com, Inc.*, 404 N.J.Super. 415, 424, 962 A.2d 532 (App.Div.2009), quoting *Thiedemann v. Mercedes–Benz U.S.A., LLC*, 183 N.J. 234, 244, 872 A.2d 783 (2005). The CFA does not require reliance, only a showing of a causal link between the alleged wrongful conduct and the alleged loss. *See New Jersey Citizen Action*, 367 N.J.Super. at 15, 842 A.2d 174 ("While it is certainly true that the element of traditional reliance required to be pleaded and proven in a common law fraud or misrepresentation case need not be proven in order to recover for damages pursuant to the CFA, plaintiffs must nonetheless plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained."). This link is adequately pled in the Amended Complaints.[20]

To sum up: Because the underlying New Jersey tort claims are barred by the economic loss doctrine, Cathcart's tort-related claims of aiding and abetting (Count X) and civil conspiracy (Count XII) are also barred. As punitive damages (Count XIII) and injunctive relief (Count XIV), are not stand-alone causes of action under New Jersey law, these counts will also be dismissed (without prejudice to any equitable relief to which Cathcart may ultimately be entitled). *See Heindel*, 381 F.Supp.2d at 386. Cathcart's claim against Swiss Caps under the CFA (Count I) involving the labeling and manufacture of Liquid Hoodia will survive.

*RPI*

The only allegation common to the Amended Complaints that is specific to

---

19. "[L]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new [state-law] trails will be blazed." *Putnam Res. v. Pateman*, 958 F.2d 448, 470 n. 25 (1st Cir.1992), quoting *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir.1990).

20. "Plaintiff and putative class have been financially harmed ... specifically by the loss of their money spent on Slimquick, NV and/or Liquid Hoodia, which did not provide any of its purported weight loss benefits." N.J. Amended Complaint ¶ 175. *See also* Md. Amended Complaint ¶ 157; Mass. Amended Complaint ¶ 91; Nev. Amended Complaint ¶ 90.

RPI is that it manufactured NV from 2006 to ("at a minimum") August 31, 2007. Cathcart, the New Jersey plaintiff, alleges that RPI also manufactured Liquid Hoodia from March 1, 2007, to the time the Complaint was filed. N.J. Amended Complaint ¶ 10(b). As with Swiss Caps, plaintiffs assert that RPI "knew or should have known that NV and Liquid Hoodia did not contain green tea and/or Hoodia gordonii." *See* Md. Amended Complaint ¶ 64; Mass. Amended Complaint ¶ 65; Nev. Amended Complaint ¶ 64; N.J. Amended Complaint ¶ 69.

RPI moves for dismissal of all of plaintiffs' claims under the consumer fraud statutes (Nevada Deceptive Trade Practices Act, Nev.Rev.Stat. § 598.0963; New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8–1, et seq.; Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 9, and Maryland Consumer Protection Act, Md.Code Ann., Com. Law § 13–101, et seq.), as well as the claims of common-law fraud, civil conspiracy, aiding and abetting, injunctive relief, and punitive damages.[21] RPI asserts, like Swiss Caps, that plaintiffs have failed to "connect" it to any of the false labeling or marketing claims that are at "the heart of this case." Substantively, RPI asserts that plaintiffs have "fail[ed] to allege any causal connection between the alleged misrepresentations and plaintiffs' injuries" and have neglected to "plead specificity with respect to fraud-based claims." RPI Memorandum, at 1.

■ There are no allegations in any of the Amended Complaints that any named plaintiff purchased NV. "The claims of the representatives must have the essential characteristic common to the claim of the class." *In re Cadillac V8–6–4 Class Action*, 93 N.J. 412, 424–425, 461 A.2d 736 (1983). To fulfill that requirement, a plaintiff must show that the "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996). *Cf. CitaraManis v. Hallowell*, 328 Md. 142, 151–152, 613 A.2d 964 (1992) ("Many of the state consumer protection acts permit a consumer to bring a private action against a businessman who has acted unfairly or deceptively only if the consumer has been injured or damaged by the businessman's conduct. This restriction is said to prevent aggressive consumers who were not personally harmed by the prohibited conduct, or even involved in a transaction with the offending businessman, from instituting suit 'as self-constituted private attorneys general' over relatively minor statutory violations.").

■ Because Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, a plaintiff who lacks standing

---

**21.** The deceptive trade practices claims are set out in Count I of each of the Amended Complaints. The fraud claims are set out in Count II of the Maryland and Massachusetts Amended Complaints, and Count III of the Nevada and New Jersey Amended Complaints. The civil conspiracy claims against RPI are contained in Count VIII of the Maryland and Massachusetts Amended Complaints, and Count XI of the Nevada and New Jersey Amended Complaints. The aiding and abetting claims are contained in Count VII of the Maryland and Massachusetts Amended Complaints, and Count X of the Nevada and New Jersey Amended Complaints. The injunctive relief claims are alleged in Count XII of the Maryland Amended Complaint, Count XI of the Massachusetts Amended Complaint, and Count XIV of the Nevada and New Jersey Amended Complaints. The punitive damages claims are set out in Count XIII of the Nevada and New Jersey Amended Complaints. No punitive damages claims are asserted in the Maryland and Massachusetts Amended Complaints, as neither jurisdiction permits an award of punitive damages per se.

(that is, who has failed to show the existence of a case or controversy) cannot invoke the machinery of a class action, which is a creation not of law, but of the Federal Rules of Civil Procedure. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "[T]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). *See also Donahue v. City of Boston,* 304 F.3d 110, 116 (1st Cir.2002) (the party invoking federal jurisdiction bears the burden of establishing the requisite elements of standing for each claim and for each type of relief sought).

 This court has invoked Article III in holding that plaintiffs had no standing to sue on behalf of mutual funds whose shares they did not own, even though they owned shares in other funds in the same funds family. *See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,* 658 F.Supp.2d 299, 303 (D.Mass.2009) ("To show standing a plaintiff must demonstrate that it has personally suffered: (1) an injury-in-fact; (2) that is fairly traceable to defendants' alleged misconduct; and (3) is likely to be redressed by a favorable decision."). *See also Forsythe v. Sun Life Fin., Inc.,* 417 F.Supp.2d 100, 119 (D.Mass.2006); *In re Eaton Vance Corp. Sec. Litig.,* 219 F.R.D. 38, 40–41 (D.Mass.2003). As none of the named plaintiffs is alleged to have purchased NV, the claims involving NV must

be dismissed. Similarly, there are no allegations that RPI played any part in the manufacture of Slimquick; hence RPI will be dismissed from the Slimquick claims as well. The only plaintiff who is alleged to have purchased Liquid Hoodia is Cathcart, the New Jersey plaintiff. Consequently, RPI will be dismissed as a defendant in the Maryland, Massachusetts, and Nevada Amended Complaints.

To sum up: RPI's motion to dismiss is *ALLOWED* as to all claims involving the manufacture of NV and Slimquick. The motion is also *ALLOWED* as to the Liquid Hoodia claims asserted under the Nevada Deceptive Trade Practices Act, the Massachusetts Consumer Protection Act, and the Maryland Consumer Protection Act. For the reasons explained with respect to Swiss Caps, RPI's motion to dismiss the New Jersey CFA claim regarding Liquid Hoodia is *DENIED*. Finally, RPI's motion to dismiss the New Jersey common-law claims is *ALLOWED*.

*WellNx*

WellNx moves to dismiss the following claims: any violations of state consumer fraud statutes; common-law fraud; civil conspiracy; injunctive relief; punitive damages; and corporate veil-piercing.[22] WellNx first argues that the deceptive trade practices statutes of each of the bellwether states require plaintiffs to establish a causal connection between the alleged deception and the claimed loss. *See* Mass. Gen. Laws ch. 93A, § 9(1) (authorizing a private cause of action by "[a]ny person ... who has been injured by another person's use or employment of any [unlawful] method, act or practice."). *See also Iannacchino v. Ford Motor Co.,* 451 Mass. 623, 631 n. 12, 888 N.E.2d 879 (2008)

---

**22.** As previously noted, plaintiffs have voluntarily dismissed the manufacturing defect and design defect claims.

("[P]laintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G.L. 93A. Rather, 'what the plaintiffs must show is a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.'"), quoting *Int'l Fid. Ins. Co. v. Wilson,* 387 Mass. 841, 850, 443 N.E.2d 1308 (1983). *See also Butcher v. Robertshaw Controls Co.,* 550 F.Supp. 692, 703 (D.C.Md.1981) (same).

 But this is as far as it goes. None of the bellwether jurisdictions requires anything more than that causation be pled, in other words, that plaintiffs plausibly plead that defendants made representations about the weight-reducing properties of their products, that plaintiffs purchased the products expecting to lose weight, and that the products did not perform as advertised. *See* Nev.Rev.Stat. § 598.0925 ("[A] person engages in a 'deceptive trade practice' when, in the course of his business or occupation, he makes an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion."); *Carroll v. Cellco P'ship,* 313 N.J.Super. 488, 502, 713 A.2d 509 (App.Div.1998) (under the New

Jersey CFA, a plaintiff "must show an ascertainable loss as a result of defendant's conduct and a causal relationship."). Plaintiffs allege that they purchased Slim-Quick and Liquid Hoodia to lose weight, that the products were represented to contain ingredients that would cause "rapid fat loss" and "female fat burn," and that they did not perform as promised.

Second, plaintiffs allegations of reliance are sufficiently pled.[23] Each named plaintiff is alleged to have purchased Slimquick or Liquid Hoodia with the expectation of losing weight. It is self-evident that the printing on the packages and bottles would have led plaintiffs to believe that they were purchasing a "weight loss" product. Plaintiffs also allege, and persuasively so, that the very name "Slimquick" conveys an implicit promise of rapid weight loss. While WellNx maintains that there is no statement in the Amended Complaints that class members in a generic sense relied on the alleged misrepresentations in making purchases of its products, that is not correct. Plaintiffs allege that "all" Class Members ("all" includes the named plaintiffs) relied to their detriment on WellNx's deceptive statements and that "all" of the Class Representatives' claims "are based upon the same acts and legal theories" that form the basis of the Class Members' claims. Md. Amended Complaint ¶ 160;

---

**23.** Reliance is an element of plaintiffs' common-law fraud claims and the claim of a violation of Maryland's deceptive trade practices statute. *See Barows v. Chase Manhattan Mortgage Corp.,* 465 F.Supp.2d 347, 366–367 (D.N.J.2006) (dismissing fraud claims because "plaintiff has not alleged that she relied on the alleged misrepresentation, and no set of facts in her Complaint can be construed to prove that she did rely on the misrepresentation."); *Sebago, Inc. v. Beazer E., Inc.,* 18 F.Supp.2d 70, 85, 89 (D.Mass.1998) (dismissing fraud claims because plaintiffs failed to allege reasonable reliance with the requisite particularity); *Van de Velde v. Coopers & Lyb-*

*rand,* 899 F.Supp. 731, 738 (D.Mass.1995) ("A claim of fraud and deceit in Massachusetts should ordinarily be dismissed unless it pleads actual reliance by the named plaintiffs...."); *Stearns' Props. v. Trans–World Holding Corp.,* 492 F.Supp. 238, 242 (D.Nev. 1980) (dismissing fraud claim where seller of real estate failed to show that he relied on alleged misrepresentations by the purchaser); *Hartmeyer v. Trane Co.,* 216 F.Supp.2d 500, 503 (D.Md.2002) (granting motion for summary judgment on fraud claims because Maryland law requires that "plaintiff must have reasonably or justifiably relied on defendant's allegedly false statements.").

Mass. Amended Complaint ¶ 141; Nev. Amended Complaint ¶ 169; N.J. Amended Complaint ¶ 178.

■■■ The more cogent argument for dismissal of at least some of the claims against WellNx is (again) the economic loss doctrine. As previously noted, the doctrine bars recovery on a negligence claim unless a plaintiff can show a personal injury or physical damage to property. *See FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993) ("Purely economic losses [are] unrecoverable in tort and strict liability actions absent personal injury or property damage."). But in Massachusetts and Nevada the doctrine does not apply when the tort is intentional. *See Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998 (1st Cir.1992) (the Massachusetts economic loss doctrine "restricts liability for ... negligently-caused economic harm, though, at the same time, it permits recovery ... where the defendant engages in an intentional tort...."); *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 206 P.3d 81, 86 (Nev.2009) ("In *Stern [Local Joint Exec. Bd. of Las Vegas v. Stern*, 98 Nev. 409, 411, 651 P.2d 637 (1982) ], we began our analysis by pointing out that purely economic losses are recoverable in actions for tortious interference with contractual relations or prospective economic advantage when the alleged interference is intentional.").

■■■ Maryland also carves out an exception to the economic loss doctrine, but one that is not applicable here. While plaintiffs in Maryland are generally precluded from bringing negligence actions to recover purely economic losses, "[e]ven where a recovery, based on a defective product is considered to be for economic loss, a plaintiff may still recover in tort if the defect creates a substantial and unreasonable risk of death or personal injury." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 123–124, 916 A.2d 257 (2007), quoting *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 336 Md. 145, 156–157, 647 A.2d 405 (1994). *See also Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 34–36, 517 A.2d 336 (1986).[24] No such threat is alleged in the Amended Complaints, nor could an allegation of a substantial risk of death or injury resulting from the use of WellNx products be credibly made.

■■■ In pleading the common-law fraud claims, plaintiffs allege that "[t]he statements and omissions of material fact ... were known by the defendants to be false...." These statements include the testimonials and weight loss representations on the labels and in the packaging of WellNx products. Plaintiffs also assert that WellNx intentionally substituted cheaper ingredients for Hoodia gordonii in Liquid Hoodia. Consequently, the motion to dismiss the fraud-based claims against WellNx under Massachusetts and Nevada law will be *DENIED*. As plaintiffs have not alleged (nor could they) that WellNx's products created a dangerous risk of physical harm, the Maryland and New Jersey tort claims are *DISMISSED*.

---

**24.** Maryland courts use a two-prong analysis to determine whether the *Whiting-Turner* exception applies in a particular case. This analysis includes consideration of both: (1) "the nature of damage threatened"; and (2) the "probability of damage occurring." *Lloyd*, 397 Md. at 128, 916 A.2d 257, citing *Morris v. Osmose Wood Preserving*, 340 Md. 519, 533, 667 A.2d 624 (1995). The exception applies in cases where there is either a substantial likelihood of injury, or where resulting injuries are likely to be severe. *Id.* (stating that "if the possible injury is extraordinarily severe, i.e. multiple deaths, we do not require the probability of the injury occurring to be as high as we would require if the injury threatened were less severe, i.e. a broken leg or damage to property.").

Finally, WellNx notes (as have the manufacturing defendants) that because none of the representative plaintiffs are alleged to have purchased NV, the NV-related claims must be dismissed. Plaintiffs respond that WellNx "really is asking the court to rule prematurely on whether the Class Representatives' claims are typical of those of the proposed Classes." Plaintiffs maintain that there are no material distinctions among the accused WellNx products, and that it is sufficient for present purposes that all of the products are alleged to have been designed, developed, formulated, and marketed in the same devious fashion. However, as the court has noted, standing is a threshold inquiry, *see Warth,* 422 U.S. at 498, 95 S.Ct. 2197, that may not be glossed over on the chance that a case or controversy might turn up during discovery.

■ At the risk of repetition, punitive damages and injunctive relief are not stand-alone causes of action in three of the bellwether states.[25] *See Heindel,* 381 F.Supp.2d at 386 ("Plaintiffs' claims for injunctive and equitable relief do not constitute separate causes of action."); *Rispoli v. Jackson,* 51 Md.App. 606, 610, 445 A.2d 349 (1982) ("[A] claim for punitive damages for negligent entrustment was not separate and distinct from judgment as to damages on the negligence count."); *Porcaro v. Chen,* 2004 WL 3091558, at *6 (Mass.Super., Nov. 30, 2004) ("By definition, punitive damages are not a separate legal claim. Punitive damages constitute a part of the element of damages of a legal claim."). *See also Arizona State Carpenters Pension Trust Fund v. Miller,* 938 F.2d 1038, 1040 (9th Cir.1991) ("We join the Third Circuit in holding that '[w]hen liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b).' "); *Denholm v. Houghton Mifflin Co.,* 912 F.2d 357, 359 (9th Cir.1990) ("[A] cause of action for punitive damages is not . . . separate and distinct from the underlying claim for compensatory damages."), quoting *Lanier v. Sallas,* 777 F.2d 321, 325 (5th Cir.1985). The equitable counts will therefore be dismissed in the Maryland, Massachusetts, and New Jersey actions.

■ To sum up: WellNx's motion to dismiss plaintiffs' claims for violation of the various deceptive trade practices acts are *DENIED,* except as to the marketing of NV. WellNx's motion is *DENIED* as to plaintiffs' claims for common-law fraud under Massachusetts and Nevada law. The motion is *ALLOWED* with respect to the fraud claims under New Jersey and Maryland law. WellNx's motion to dismiss the civil conspiracy claim is *DENIED.*[26] All claims involving NV are *DISMISSED.* The claims for injunctive relief, punitive damages, and piercing the corporate veil, brought under Massachusetts, New Jersey, and Maryland law, are also *DISMISSED.*

### ORDER

To recap: For the reasons stated in the foregoing opinion, Swiss Caps' motion to dismiss the New Jersey common-law fraud and negligence claims is *ALLOWED.* Swiss Caps' motion to dismiss the New

---

25. The court relies on plaintiffs' counsel's representation that prayers for equitable relief must be separately pled in Nevada.

26. "The actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from . . . liability) and of the corporation (because its agents conspire on its behalf)." *United States v. Peters,* 732 F.2d 1004, 1008 (1st Cir.1984).

Jersey claims of aiding and abetting (Count X) and civil conspiracy (Count XII) is also *ALLOWED*. The punitive damages (Count XIII) and injunctive relief (Count XIV) counts are *DISMISSED*. The motion to dismiss the New Jersey CFA claims (Count I) is *DENIED*.

RPI's motion to dismiss is *ALLOWED* as to all claims involving the manufacture of NV or Slimquick. The motion to dismiss is *ALLOWED* with respect to the Liquid Hoodia claims brought under the Nevada Deceptive Trade Practices Act, the Massachusetts Consumer Protection Act, and the Maryland Consumer Protection Act. The motion is *DENIED* with respect to the New Jersey Liquid Hoodia CFA claim. RPI's motion to dismiss the common-law claims (fraud, negligence, civil conspiracy, and aiding and abetting) against RPI is *ALLOWED*.

WellNx's motion to dismiss plaintiffs' claims for violation of the various deceptive trade practices acts is *DENIED*. WellNx's motion is also *DENIED* as to plaintiffs' claims for common-law fraud under Massachusetts and Nevada law. The motion is *ALLOWED* with respect to the claims under Maryland and New Jersey law. The motion to dismiss the civil conspiracy claim is *DENIED*. All claims involving the manufacture or sale of NV are *DISMISSED*. The equitable claims brought under Maryland, Massachusetts, and New Jersey law, including the veil-piercing claim, are also *DISMISSED*.

SO ORDERED.