842 A.2d 174 (2003)
367 N.J. Super. 8
NEW JERSEY CITIZEN ACTION, Citizen Action New York, Health Action New Mexico, Lisa Tyson, and Kevin P. Santoian, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,
v.
SCHERING-PLOUGH CORPORATION, Commonhealth L.P., and Quantum Group (U.S.), Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 2003.
Decided July 15, 2003.
*175 Thomas M. Sobol (Hagens Berman) of the Boston bar, admitted pro hac vice, argued the cause for the appellants (Lite DePalma Greenberg & Rivas; Williams, Cuker & Berezofsky; Milberg, Weiss, Bershad, Hynes & Lerach; Carey & Danis; Rosenfeld & Associates; and Lawrence G. Soicher, attorneys; Allyn Z. Lite and Bruce D. Greenberg, of counsel and on the brief; Mary Jean Pizza, on the brief).
Douglas S. Eakeley, Roseland, argued the cause for respondents (Lowenstein Sandler; and Mayer, Brown, Rowe & Maw, attorneys; Mr. Eakeley, of counsel and on the brief; Richard Ben-Veniste, of counsel).
Before Judges PRESSLER, AXELRAD and HOENS.
The opinion of the court was delivered by HOENS, J.A.D.
Plaintiffs are not-for-profit organizations and individuals seeking to assert, on behalf of a nationwide class, consumer fraud claims against defendants Schering-Plough Corp. (Schering), a pharmaceutical manufacturer, and two companies that assisted it in advertising and marketing certain of its Claritin products. Plaintiffs appeal from the decision of the trial judge dismissing their complaint. In granting the defendants' motion to dismiss, Judge Nicholas Stroumtsos issued a written decision analyzing the plaintiffs' factual assertions and legal arguments and concluded that their complaint failed to state a claim *176 on which relief may be granted. We have carefully reviewed the record and the arguments of counsel and we affirm for substantially the reasons expressed by Judge Stroumtsos in his May 16, 2002 letter opinion. We add, however, the following observations.
Schering manufactures the proprietary pharmaceutical product Claritin, an allergy medication marketed in a variety of forms. Like all prescription drugs, it is subject to the Food and Drug Administration's (FDA) pre-marketing approval process to ensure that it is both safe and efficacious and is subject to FDA regulation thereafter. 21 U.S.C. § 355 et seq. Defendants Quantum Group and Commonhealth L.P. are marketing and advertising agencies that worked for Schering in connection with its direct-to-consumer (DTC) sales strategy for its Claritin products. Plaintiffs contend that they are representatives of a class of consumers of these products who have been damaged by false claims about the efficacy of the products in Schering's DTC advertising. More specifically, they contend that the products are not efficacious but that the prices for these products were driven up to artificially high levels through demand for them generated by the DTC marketing strategy which asserted to consumers that the products were universally effective. Moreover, plaintiffs contend that because members of the class repeatedly purchased the products at the artificially inflated prices, they have suffered damages of the type the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 et seq., is designed to remedy.
In granting the defendants' motion, the judge held that plaintiffs had failed to state a claim, R. 4:6-2(e), within the meaning of the CFA because the statements in the DTC advertising materials were not actionable statements of fact but were merely product puffery and because plaintiffs could not demonstrate any causal connection between the advertisements and any ascertainable loss by them or any class members.
On appeal, plaintiffs contend that: (1) the judge erred in finding that the advertisements did not include actionable statements of fact; (2) that, contrary to the judge's conclusion, the amended complaint adequately alleged unconscionable commercial practices within the meaning of the CFA; (3) that the price inflation theory sufficiently alleges a causal link between the advertisements and increased prices charged to consumers which constitutes an ascertainable loss; and (4) that the plaintiffs have sufficiently asserted that they purchased all varieties of the products and have been damaged as a result.
We begin by observing that the CFA, N.J.S.A. 56:8-1 et seq., vests private citizens with a cause of action under defined circumstances. It provides, in pertinent part: "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... may bring an action ... in any court of competent jurisdiction." N.J.S.A. 56:8-19. Thus, to state a claim under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994).
Moreover, we recognize the indulgent standard that applies to review of complaints in the context of a motion to dismiss for failure to state a claim. Printing Mart-Morristown v. Sharp Electronics *177 Corp., 116 N.J. 739, 771-72, 563 A.2d 31 (1989). The requirement that the court search the complaint with liberality and indulgence to determine whether a cause of action is even suggested, however vaguely, is a significant one. Id. at 746. Dismissal on this ground, in the CFA context, is therefore appropriately approached with hesitation. Seidenberg v. Summit Bank, 348 N.J.Super. 243, 249-50, 791 A.2d 1068 (App.Div.2002); see Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 263, 696 A.2d 546 (1997); cf. Lieberman v. Port Auth., 132 N.J. 76, 79, 622 A.2d 1295 (1993). On the record before us, however, the exercise of that authority by the trial court was entirely appropriate.
As our Supreme Court has held, "[t]o constitute consumer fraud ... the business practice in question must be `misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer...." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416, 655 A.2d 417 (1995), cert. denied, 516 U.S. 1066, 116 S.Ct. 752, 133 L.Ed.2d 700 (1996). And our Supreme Court has also recognized that there is indeed a distinction between misrepresentations of fact actionable under the CFA and mere puffing about a product or a company that will not support relief. Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621 (1991). Tested against this standard, we conclude, first, that the statements in Schering's DTC advertising are not actionable statements of fact within the meaning and intendment of the CFA.
The central contention of plaintiffs is that statements in DTC advertisements which used such phrases as "you ... can lead a normal nearly symptom-free life again" were intended to be understood by consumers as a guarantee of total and universal effectiveness of the product. That contention is meritless. This and similar statements in Schering's DTC advertising for these products are, simply put, not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable. These statements, merely by the use of the word "you" and by the failure to include a disclaimer along the lines of "results may vary" are not transformed into a guarantee of universal and complete effectiveness and thus are not statements of fact actionable under the CFA. We decline to conclude that the statements went beyond mere puffing as a result of which they were properly rejected as the basis for a CFA claim.
We reach this conclusion for a further reason, however. While not specifically a focus of the motion judge's analysis, plaintiffs' complaint overlooks an essential difference between the pharmaceutical industry and others. Regardless of the claims in the DTC advertising campaign, the products in question remain subject to the strict regulation of the FDA. See 21 U.S.C. § 352; 21 C.F.R. § 202.1.
Our Supreme Court has recognized, in an analogous context, that a pharmaceutical manufacturer's compliance with FDA regulations including regulations relating to DTC marketing campaigns may shield it in a failure to warn case. Perez v. Wyeth Labs., Inc., 161 N.J. 1, 24, 734 A.2d 1245 (1999). By analogy, the wording of the ads, to the extent that it is subject to FDA oversight, see 21 C.F.R. § 202.1, is similarly not actionable.
Moreover, as a practical matter, the products remain available only through a physician's prescription. While our Supreme Court has held that the learned intermediary doctrine will not shield the manufacturer from a duty to warn claim arising in the DTC context, Perez v. Wyeth Labs., Inc., supra, 161 N.J. at 21-22, 734 A.2d 1245, nonetheless, the intervention by *178 a physician in the decision-making process necessitated by his or her exercise of judgment whether or not to prescribe a particular medication protects consumers in ways respecting efficacy that are lacking in advertising campaigns for other products. In this context, that is, within a highly regulated industry in which the ultimate consumer is not in fact free to act on claims made in advertising in any event, the relationship between words used in the advertising and purchase of the product is at best an attenuated one.
We further conclude that plaintiffs cannot demonstrate that any loss that they may have suffered was caused by defendants' allegedly misleading DTC advertisements. Much of the debate between the parties as to the causation question centers on plaintiffs' argument that because they need not prove that they relied on the statements in the advertisements and need only demonstrate a causal nexus between the statements and their loss, that their theory of fraud on the market or price inflation should have sufficed to withstand the motion to dismiss for failure to state a claim. While it is certainly true that the element of traditional reliance required to be pleaded and proven in a common law fraud or misrepresentation case, see Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521 (1981), need not be proven in order to recover for damages pursuant to the CFA, see Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000), plaintiffs must nonetheless plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained.
Here, however, the entire argument asserted by plaintiffs concerning the causal nexus relies upon their contention that the trial court should have permitted them to demonstrate that nexus through the use of the general fraud on the market or price inflation theory. That theory, utilized in some jurisdictions in securities fraud litigation to relieve a class of plaintiffs from the requirement of demonstrating causation or reliance in the traditional sense, however, has been rejected by our Supreme Court. In Kaufman v. i-Stat Corp., 165 N.J. 94, 754 A.2d 1188 (2000), the Court, while referring to the theories as ones which have "a place in the securities law of this nation" rejected them as inconsistent with our notions of common law fraud. While, as plaintiffs point out, i-Stat considered the fraud on the market and price inflation theories only in the context of traditional common law fraud, where pleading and proving the element of reliance remains a part of plaintiff's burden, we think it plain that the theories have no place as a part of the proofs required of plaintiffs in the CFA context either.
As plaintiffs' counsel explained the theory that they press us to adopt in this case, the fact of advertising the products caused the prices to rise both for the ones that are effective and for these, allegedly ineffective, products as well. Therefore, they argue, the causal relation between the misstatements about these products and their ascertainable loss is that they must have paid a higher price for the less effective product. As defendants aptly note, however, the theory on which plaintiffs seek to rely would virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered. Adopting plaintiffs' theory would therefore fundamentally alter the concept of causation in the CFA context. Indeed, accepting plaintiffs' argument, the relationship between the alleged misstatement and the ascertainable loss suffered would become so attenuated that it would effectively disappear. More to the point, adopting plaintiffs' version of causal nexus *179 would also effectively eliminate the distinction in the Act itself respecting private rights of action created for consumers, N.J.S.A. 56:8-19, and the rights created to permit the Attorney General to pursue a remedy, even in the absence of harm to any particular individual, N.J.S.A. 56:8-2, a distinction that our Supreme Court has refused to obliterate. See, e.g., Weinberg v. Sprint Corp., 173 N.J. 233, 237, 801 A.2d 281 (2002). We, likewise, decline the invitation to stretch the bounds of the Act to such an extent.
Affirmed.