**Cortney D. HASSLER, on behalf of himself and all others similarly situated, Appellant**

v.

**SOVEREIGN BANK.**

No. 09–2982.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) March 8, 2010.

Filed: March 15, 2010.

Benjamin F. Johns, Esq., Joseph G. Sauder, Esq., Chimicles & Tikellis, Haverford, PA, for Appellant.

William J. DeSantis, Esq., Rosemary B. Walsh, Esq., Ballard, Spahr, Andrews & Ingersoll, Voorhees, NJ, Darryl J. May, Esq., Ballard Spahr, Philadelphia, PA, for Sovereign Bank.

Before: AMBRO, SMITH, and MICHEL,* Circuit Judges.

## OPINION

SMITH, Circuit Judge.

Plaintiff Cortney Hassler filed this putative class action against Sovereign Bank because of overdraft fees charged to his checking account, challenging them as violating the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § § 56:8–1, *et seq.* ("NJCFA"), and New Jersey common law. For the reasons expressed below, we will affirm the judgment of the District Court, which dismissed this action.

### I.

Hassler's complaint recounts only two specific instances of Sovereign's supposed unlawful practices. On August 28, 2008, Hassler had an available balance of $112.35. He made a $39.58 payment in the morning and made a $140.00 debit in the afternoon. Had the transactions been posted to the account in order of occurrence, he would have overdrawn his account only on the second transaction. However, Sovereign rearranged the debits so that the second transaction was posted first, resulting in two overdrafts. Sovereign assessed two overdraft fees in the amount of $33.00 each. Hassler similarly overdrew his account three days later, and the charges were posted in the same reverse-chronological order on the next business day, resulting in multiple overdraft fees.

The terms governing Hassler's checking account and the use of his debit card are contained in an Account Agreement, two parts of which are relevant here. Section A is called "General Terms." Section C is called "Electronic Banking." In section A.7, entitled "Withdrawals," the following paragraph was printed in bold:

> We reserve the right to pay the withdrawals you make from your Account regardless of the method of withdrawal in any order we determine. This includes withdrawals made at an ATM or by computer, POS purchases, checks, pre-authorized payments and any other means we make available to you. The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day. Generally, we post your payment transactions each business day in descending order, starting with the largest payment order that is presented for payment. This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made

---

* The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

at the supermarket. The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.

In Section A.13, entitled "Overdrafts and Unavailable Funds," the following paragraphs appear:

> If you write a check or other order or otherwise request a withdrawal from your Account, such as by using an ATM or making a purchase using a Visa CheckCard or ATM Card, for more money than you have available for withdrawal from your Account, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order. You may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds.

> We will not be liable to you if we choose to honor such a payment order. If we honor your payment order, you agree to pay us the amount of the overdraft immediately.

Finally, Section C.1, entitled "Electronic Banking Services," contains a set of paragraphs marked "Sovereign Visa Check-Card or ATM Card," which include the following:

> You may use your Card at POS terminals displaying the logo of a network that is authorized to accept your Card to pay for purchases and to make cash withdrawals. POS terminals are often located at gas stations, supermarkets, drug stores and other retail merchants. You may also use your Visa CheckCard to pay for purchases at any merchant displaying the Visa or Visa debit symbol. When you make a purchase using your Card, the amount of your purchase is automatically deducted from your checking account.

Hassler argues that Sovereign's reordering of the debits and withdrawals of his and all class members' accounts violates the NJCFA, constitutes a breach of the covenant of good faith and fair dealing underlying their contracts, and constitutes unjust enrichment.

The District Court granted Sovereign's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction was proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and this Court's jurisdiction lies under § 1291. New Jersey law governs.

## II.

Our review of the District Court's grant of a motion to dismiss is plenary. *Rodriguez v. Our Lady of Lourdes Medical Center,* 552 F.3d 297, 302 (3d Cir.2008). A motion to dismiss for failure to state a claim should be granted "if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir.2007). In addition to the allegations of the Complaint, the Court can also consider attachments to the Complaint and "other indisputably authentic documents underlying the plaintiff's claims." *Sentinel Trust Co. v. Univ. Bonding Ins. Co.,* 316 F.3d 213, 216 (3d Cir.2003). Here, that would include the Account Agreement.

## A.

Hassler's first claim is for violation of the NJCFA. To state a claim, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between" the two. *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 964 A.2d 741, 749 (2009). Unlawful conduct includes "any unconscionable commercial practice, deception, fraud, false

pretense, false promise, misrepresentation, or the knowing, [sic] concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission." N.J. Stat. Ann. § 56:8–2. New Jersey defines the term "unconscionable business practice" as "the standard of conduct contemplating good faith, honesty in fact and observance of fair dealing." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 655 A.2d 417, 429 (1995) (quotation, alteration, and ellipsis omitted). "To constitute consumer fraud ... the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer...." *Id.*

Whether a practice itself is unfair is a classic jury question. However, where the claim is based on written statements, the court must make the legal determination of whether a practice can be said to be unfair in light of the written statements. *See, e.g., Rosenberg v. Wash. Mut. Bank, FA*, 369 N.J.Super. 456, 849 A.2d 566, 573 (2004) (affirming dismissal of NJCFA claim because actions taken by bank were clearly set forth in disclosure documents); *N.J. Citizen Action v. Schering–Plough Corp.*, 367 N.J.Super. 8, 842 A.2d 174 (2003) (affirming dismissal if NJCFA claim because pharmaceutical advertisements were mere puffery). The terms of the Account Agreement here clearly explained the actions that Sovereign eventually undertook. Therefore, there is no jury question, but only the legal question of whether those terms and actions violate the NJCFA in light of having been explained in the Account Agreement.

■ This claim was properly dismissed. The Account Agreement explicitly provided for the reordering of charges of which Hassler complains. In Section A.7, Sovereign "reserve[d] the right to pay the withdrawals ... regardless of the method of withdrawal in any order [it] determine[d]." Sovereign clarified what this meant by repeating the same principle in the same paragraph using different words: "The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day." Sovereign specifically stated that "[g]enerally, [it] post[s] ... payment transactions each business day in descending order, starting with the largest payment order that is presented for payment." It also gave an example: "This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket." Sovereign even warned Hassler that "[t]he order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds." The Account Agreement also makes clear that attempting to charge an account beyond its available balance will not necessarily result in the charge being denied. Rather, Sovereign retained the right either to permit or refuse to honor the charge in Section A.13.

Hassler's claim that he and others depended on Sovereign to ensure that charges were posted to their accounts in the chronological order in which the customer incurred them is undercut by Sovereign's explicit reservation of the right to post charges in any order it determines and its notification that it generally posts charges in descending order of amount. His focus on one sentence—the "automatically" sentence, which comes from the section describing how a debit card works, not setting forth how charges are posted to the account and overdraft fees are imposed—without reference to the rest of the Account Agreement fails as matter of law.

## B.

Hassler next argues that the District Court erred in dismissing his claim for breach of contract for violating the duty of good faith and fair dealing. Such a duty is contained in all contracts governed by New Jersey law. *Seidenberg v. Summit Bank,* 348 N.J.Super. 243, 791 A.2d 1068, 1074 (2002) (quoting *Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 690 A.2d 575, 587 (1997)). Establishing this claim requires proof "sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.,* 182 N.J. 210, 864 A.2d 387, 396 (2005) (quotation omitted). A defendant may be held liable for breach of this duty even if its conduct does not violate the contract's express terms if the plaintiff's "reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *Id.* (citation omitted).

This claim also fails. Hassler does not allege any bad motive on the part of Sovereign. The allegations of the Complaint, boiled down, amount to: Sovereign re-ordered the charges, this resulted in overdraft fees, and this was unfair. The Complaint repeatedly asserts the unlawful nature of Sovereign's acts, but is silent on its intention in doing so—other than simply seeking profit. "A good faith performance doctrine may be said to permit the exercise of discretion for any purpose—including ordinary business purposes—reasonably within the contemplation of the parties. It follows, then, that a contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming the breach." *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 773 A.2d 1121, 1127 (2001) (quotation omitted). Thus, "[w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Id.* at 1130 (quotation omitted). As stated above in the NJCFA context, and below in the unjust enrichment context, the Account Agreement clearly explains that Sovereign may reorder charges. Hassler cannot ignore this language and argue that he could not have expected Sovereign's rearrangement of the charges and his incurrence of overdraft fees in the manner described. This claim was properly dismissed.

## C.

Hassler's final claim is for unjust enrichment, which "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Goldsmith v. Camden County Surrogate's Office,* 408 N.J.Super. 376, 975 A.2d 459, 462 (2009) (quotation omitted). The claim requires proof that the defendant received a benefit and that retention of the benefit would be inequitable. *Id.* (quotation omitted). Satisfying the second prong of the test requires Hassler to demonstrate that Sovereign was "enriched ... beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 641 A.2d 519, 526 (1994).

For the same reasons the NJCFA claim fails, this claim fails. The Account Agreement clearly reserved to Sovereign the right to post charges to the account each day in descending order of amount. Because such posting was not "beyond its contractual rights," *id.,* Sovereign's collection of the overdraft fees did not "en-

rich[ ][it] beyond its contractual rights." *Id.*[1]

## III.

We will affirm the judgment of the District Court.

---

1. Because all of Hassler's claims fail as a matter of New Jersey state law, we need not address Sovereign's preemption argument.