**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3523
_____

MZL CAPITAL HOLDINGS, INC,
On behalf of themselves and all others similarly situated;
THOMAS RAIC,
Appellants

v.

TD BANK, N.A.; UNIDENTIFIED ENTITIES (A-Z)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 1-14-cv-05772)
District Judge:  Honorable Renee M. Bumb

_____

Submitted under Third Circuit LAR 34.1(a)
on March 24, 2017

Before:  SMITH, Chief Judge, JORDAN and ROTH, Circuit Judges

(Opinion filed: May 8, 2018)

_____

OPINION[*]

_____

ROTH, Circuit Judge:

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiffs MZL Capital Holdings, Inc. (MZL) and Thomas Raic appeal the District Court's dismissal of their Second Amended Class Action Complaint. Since plaintiffs' allegations are inadequate, we will affirm.

**I.**

MZL, a New York corporation, and Raic, a resident of New York State, are both checking account customers of TD Bank. Plaintiffs utilized TD Bank to send and receive wired currency from foreign countries. Each plaintiff entered into a service contract with TD Bank which stated that currency would be converted using an "applicable exchange rate."[1] TD Bank's "applicable exchange rate" is calculated using a number of variables, including but not limited to the Interbank Market rate, the size of the proposed transaction, and the prevailing Customer Market rate. Although TD Bank does not define "applicable exchange rate" within any of its contracts, it provides customers its applicable exchange rate for a particular date either by telephone or e-mail.

MZL had a commercial checking account with TD Bank. Around January 29, 2014, MZL received a wire transfer from London in the amount of £70,000.00. TD Bank exchanged this currency at a rate of 1.3355 dollars on the pound, despite a higher exchange rate posted by the Wall Street Journal.[2] After MZL inquired about the

---

[1] JA 143. MZL entered into a "Business Deposit Account Agreement" with TD Bank that stated that currency would be calculated by "using our applicable exchange rate that is in effect on the date when we credit the funds to your Account and not when the deposit is made." *Id.* Although a different contract, Raic's agreement with TD Bank also referred to an "applicable rate." JA 158.

[2] The Wall Street Journal posted an exchange rate of 1.3664 dollars on the pound for January 29, 2014. JA 156. The Wall Street Journal's posted exchange rates are common benchmarks in the financial services industry.

exchange rate, TD Bank sent MZL a letter indicating that it set its rates based on criteria that "did not represent the actual cost of converting the currency given the risk it assumed in the timing of the [exchange]."[3]  Nonetheless, TD Bank provided MZL with a $250.00 credit, an amount that was less than what TD Bank would have owed MZL had it applied the exchange rate posted by the Wall Street Journal.

Raic had a personal TD Value Checking account with TD Bank.  Around July 29, 2014, Raic received a wire transfer from Croatia in the amount of €61,323.41.  TD Bank exchanged this currency at a rate of 1.3048, notwithstanding higher exchange rates posted by the Wall Street Journal[4] and OANDA Corporation.[5]  Around August 10, 2015, Raic received a wire transfer from Croatia in the amount of €22,500.00.  Once again, TD Bank exchanged this currency at a lower rate than those posted by reputable foreign exchange reporters.  After each transaction, Raic called TD Bank to determine the applicable exchange rate used during each wire transfer.  TD Bank allegedly replied that the applicable exchange rate included the market rate and a fee that applied to the transaction.

On September 16, 2014, plaintiffs filed a putative class action lawsuit against TD Bank, alleging that TD Bank's applicable exchange rate defrauded its customers in violation of the New Jersey Consumer Fraud Act (NJCFA).  Plaintiffs subsequently

---

[3] JA 156.

[4] The Wall Street Journal posted an exchange rate of 1.3409 dollars on the euro for July 29, 2014.  JA 158.

[5] OANDA posted an exchange rate of 1.33908 dollars on the euro for July 29, 2014.  JA 158.  OANDA is another reputable source of market exchange rates used by the financial services industry.

3

amended their complaint on December 4, 2015, to add claims for breach of contract,

breach of the implied covenant of good faith and fair dealing, and violation of various

other states' consumer protection laws. On December 23, 2015, TD Bank moved to

dismiss all causes of action.

On September 6, 2016, the District Court dismissed with prejudice the Second

Amended Complaint. Plaintiffs appealed.

## II.[6]

Plaintiffs appeal only the dismissal of their claims for violations of the NJCFA,

breach of contract, and breach of the implied covenant of good faith and fair dealing.

Each claim is addressed below.

### A. NJCFA CLAIM

To state a claim under the NJCFA, a plaintiff must allege (1) unlawful conduct by

a defendant, (2) an "ascertainable" loss, and (3) a causal relationship between the

defendant's unlawful conduct and the plaintiff's loss.[7] Such claims sound in fraud, and

thus must be pled with particularity as required by Rule 9(b) of the Federal Rules of Civil

Procedure.[8] When pleadings of fraudulent conduct are based on the plaintiff's

---

[6] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a dismissal pursuant to Rule 12(b)(6) and make all inferences in favor of the nonmoving party. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (citation omitted).

[7] *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014) (internal quotation marks and citation omitted).

[8] *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 202-03 (3d Cir. 2007) (applying the heightened pleading standards of Rule 9(b) to claims under the NJCFA); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (same).

information and belief, the plaintiff "must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey."[9]

Applying these standards, the District Court found that the plaintiffs did not adequately plead that TD Bank's conduct was unlawful. The court pointed out that there was nothing in the agreement that required TD Bank to use a specific exchange rate and that the applicable exchange rate was used in each instance. We agree. Even assuming, without deciding, that the facts in plaintiffs' complaint are pled with the particularity required, plaintiffs allege only that TD Bank charged a "flat embedded transaction fee equivalent to a certain number of basis points," rather than charging the rate quoted by the more established foreign exchange reporters.

While the omission of material information may constitute unlawful conduct as defined in the NJCFA,[10] the New Jersey Supreme Court has clarified that "when the alleged consumer fraud consists of an omission, . . . intent *is* an essential element of the fraud."[11] None of the plaintiffs' allegations establish such intent with particularity as required by Rule 9(b). Without any particularized factual allegations suggesting that TD Bank intended to deceive consumers, we conclude that TD Bank's alleged conduct does

---

[9] *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).
[10] The NJCFA defines "unlawful practice" as "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. 56:8-2. The NJCFA further defines "merchandise" to include "services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. 56:8-1(c).
[11] *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

5

not "stand outside the norm of reasonable business practices" or "victimize the average consumer" in any way.[12]

Accordingly, we will affirm the dismissal of plaintiffs' NJCFA claim.

## B. BREACH OF CONTRACT

Under New Jersey law, a proper breach of contract claim includes four elements: (1) the parties entered into a valid contract, (2) the plaintiff honored his own obligations under the contract, (3) the defendant failed to perform his obligations under the contract, and (4) the plaintiff sustained damages as a result.[13] Finding that nothing in the contract required TD Bank to use a particular exchange rate or disclose its methodology for calculating the "applicable exchange rate," the District Court determined that TD Bank's conduct did not breach any contractual obligation.

On appeal, plaintiffs assert that the mere fact that the customer agreement did not disclose the alleged existence of an embedded fee constitutes a violation of the depository agreements signed by TD Bank. Even ignoring the problems with these allegations discussed above, plaintiffs have still failed to identify any provision of the contracts between the parties which *required* TD Bank to disclose the existence of such a fee. Absent any such contractual obligation, a breach of contract claim cannot lie.[14] Thus, we will affirm dismissal of plaintiffs' breach of contract claim.

---

[12] *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. 2003) (internal quotation marks and citation omitted).
[13] *Frederico*, 507 F.3d at 203 (citation omitted).
[14] *Cf. Edwards v. Prudential Property & Casualty Co.*, 814 A.2d 1115, 1120 (N.J. Super. Ct. 2003) (finding that the lack of a contractual obligation defeats a breach of contract claim).

6

## C. IMPLIED CONVENANT OF GOOD FAITH

Under New Jersey law, claims for a breach of the implied covenant of good faith and fair dealing require a plaintiff to provide "evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties."[15] No claim for a breach of the covenant of good faith and fair dealing may lie, however, unless the underlying conduct is distinct from that alleged in a corresponding breach of contract claim.[16]

Plaintiffs claim a breach of the implied covenant of good faith and fair dealing because TD Bank allegedly charged an embedded transaction fee that was not listed in the contract. In this way, TD Bank misled customers by using the phrase "applicable exchange rate" to make a profit. The District Court rejected this argument, finding that the plaintiffs' claim was based on the same conduct as the breach of contract claim. Further, the District Court determined that the plaintiffs had not shown that TD Bank acted in bad faith.

Plaintiffs renew these arguments on appeal. We agree that the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is identical to its claim for breach of contract; the issue of the embedded fee serves as the sole factual basis for both

---

[15] *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotation marks and citation omitted); *see also Vasaturo Bros. v. Alimenta Trading-USA, LLC*, No. 09-2049, 2011 WL 3022440, at *5 (D.N.J. July 22, 2011) (noting that bad motive is a requirement for a claim for breach of the implied covenant of good faith and fair dealing).

[16] *See Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) (finding that, where same conduct underlies both claims, "there can be no separate breach of an implied covenant of good faith and fair dealing").

claims.  Thus, we will affirm the dismissal of plaintiffs' breach of the implied covenant of good faith and fair dealing claim as duplicative of the breach of contract claim.

## III.

In light of the foregoing, we will affirm the judgment of the District Court