**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1089-18T4

JUAN PENA and MILAGROS
PENA,

     Plaintiffs-Appellants,

v.

JOSE GOMEZ, t/a
JURGO CONSTRUCTION,

     Defendant-Respondent.

_____

> Submitted October 29, 2019 – Decided February 7, 2020
>
> Before Judges Messano and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. DC-013546-17.
>
> Andril & Espinosa, LLC, attorneys for appellants (Antonio R. Espinosa, on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

This appeal arises from a civil action for breach of contract, consumer fraud, and common law fraud brought in the Special Civil Part against a home improvement contractor. After performing some work, the contractor abandoned the project, forcing plaintiffs, Juan and Milagros Pena, to hire replacement contractors to complete the work and repair damage the first contractor caused. The trial court entered default judgment against defendant, Jose Gomez, and, after convening a proof hearing, found breach of contract. However, for reasons not explained on the record, the trial court did not find consumer fraud. Similarly, the trial court denied plaintiffs' motion for reconsideration without elaborating on its conclusion that defendant did not commit consumer fraud.

After reviewing the record in light of the applicable legal standards, we conclude that the Special Civil Part judge was clearly mistaken in refusing to reconsider whether defendant violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210. Exercising original jurisdiction, we further conclude plaintiffs have established that defendant committed a consumer-fraud violation. Accordingly, plaintiffs are entitled to attorneys' fees and treble damages in the amount of $15,000, which is the jurisdictional limit of the Special Civil Part. R.

A-1089-18T4

6:1-2(a)(1). We remand this matter to the trial court for the sole purpose of determining the amount of attorneys' fees in accordance with Rule 4:42-9(a)(8).

I.

We derive the following facts from the record on appeal. In early June 2013, plaintiffs hired defendant to replace their roof, remodel their front porch, fix the foundation, and make various other home improvements at a total cost of $20,000. The contract specified a payment schedule that provided plaintiffs would pay defendant an initial sum of $10,000 upon signing the contract. The contract clearly stated that the next installment of $5000 was not due until defendant completed work on the foundation and roof. The homeowners would next pay $4000 once defendant finished the basement and porch. The contract provided that the homeowners would tender the final $1000 installment only after defendant completed all remaining work. Defendant agreed to complete all work on the home by July 12, 2013.

On June 5, 2013, plaintiffs made the first installment payment, and defendant began work on the roof and porch. Plaintiff testified that defendant performed poorly, leaving seams in the roof that permitted water to seep into the home. Plaintiff also testified that defendant demolished the porch but did not perform work to rebuild it. Instead, defendant refused to continue work on the

home unless he received additional payment. Plaintiffs refused to make any additional payments outside the agreed-upon installment schedule, and on July 19, 2013, they sent defendant a letter notifying him that they intended to find a substitute contractor and seek damages.

On September 23, 2013, plaintiffs contracted with a substitute contractor to replace the roof and repair the damage caused by defendant at a cost of $12,500. Plaintiffs paid a substitute porch contractor $3985.46 for labor and materials, and they paid $5600 to a painting contractor to address the water damage the roof leak caused. In total, plaintiffs paid $22,085.46 to three contractors to complete the improvements and to repair the damage defendant had caused.

Defendant did not contest the suit filed by plaintiffs in the Special Civil Part, prompting the trial court to enter default judgment. Subsequently, the court conducted a proof hearing at which plaintiff, Milagros Pena, testified. The court admitted into evidence a copy of the contract between plaintiffs and defendant, plaintiffs' letter advising defendant of their intent to seek damages, and the contract with a substitute contractor.

At the conclusion of the proof hearing, the trial court found that defendant breached the contract and ordered defendant to return the down payment of

$10,000. As to consumer fraud, the trial court noted only, "there is no consumer fraud, there's no case for consumer fraud." The court gave no further explanation for rejecting this part of plaintiffs' suit.

Plaintiffs filed a motion for reconsideration pursuant to Rule 4:49-2. The trial court denied plaintiffs' motion for reconsideration without holding a hearing or providing a statement of reasons. Plaintiffs now appeal from that ruling.

## II.

Plaintiffs present two matters for our consideration. First, plaintiffs contend that the trial court erred in denying their motion for reconsideration of the court's prior ruling at the proof hearing that plaintiffs had failed to present evidence establishing defendant violated the CFA. Second, plaintiffs argue the proofs they submitted at the proof hearing and through the reconsideration motion clearly establish defendant violated the CFA, warranting treble damages and attorneys' fees. We turn first to the plaintiffs' contentions regarding the motion for reconsideration before addressing the substance of plaintiffs' consumer-fraud claim.

A-1089-18T4

III.

Rule 4:49-2 governs motions for reconsideration. The Rule serves a limited purpose aimed at permitting courts to correct their own mistakes:

> Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either [(]l) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or [(]2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990); accord Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996).]

"In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015); see also Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1993) ("The basis [for a motion for reconsideration], thus, focuses upon what was before the court in the first instance." (citing D'Atria, 242 N.J. Super. at 401)).

"The decision to deny a motion for reconsideration falls 'within the sound discretion of the [trial court], to be exercised in the interest of justice.'" In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 405 (App. Div. 2018) (alteration in original) (quoting Cummings, 295 N.J. Super. at 384). "An abuse of discretion

'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

In this instance, the trial court denied plaintiffs' motion for reconsideration without providing an explanation. Nor did the court provide an explanation for its earlier finding that plaintiffs had not established consumer fraud. We are therefore constrained to hold that the trial court was clearly mistaken in rejecting plaintiffs' motion for reconsideration of their consumer-fraud complaint, especially since the contract on its face reveals a regulatory violation of the CFA and evidence of CFA violations was uncontroverted at the proof hearing.

Although we conclude plaintiffs' consumer-fraud claim warrants reconsideration, we do not find it necessary to remand this matter to the trial court to undertake that assessment. Rather, to avoid further delay and cost, and because the facts needed to establish a basis for relief under the CFA were adduced at the proof hearing, we exercise original jurisdiction to correct these errors. R. 2:10-5; Price v. Himeji, LLC, 214 N.J. 263, 294–96 (explaining that Rule 2:10-5 "allow[s an] appellate court to exercise original jurisdiction to

eliminate unnecessary further litigation but discourage[s] its use if factfinding is involved." (alteration in original) (quoting State v. Santos, 210 N.J. 129, 142 (2012)).

IV.

The CFA affords "relief to consumers from 'fraudulent practices in the market place.'" Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)). The CFA provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction.
>
> [N.J.S.A. 56:8-19.]

"Thus, to state a claim under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12–13 (App. Div. 2003). Plaintiffs successfully alleging consumer-fraud violations are entitled to treble damages for losses resulting from the violations, as well as the "award [of] reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19.

A-1089-18T4

"An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017). A plaintiff is not required to show intent where the claimed consumer-fraud violation is a regulatory violation. Ibid.

Turning to the facts of this case, plaintiffs contend that defendant committed an unlawful practice by violating several regulatory requirements of the CFA. We conclude from the record before us that plaintiffs have presented evidence establishing that defendant committed violations of the CFA, including violations of the regulatory provisions in N.J.A.C. 13:45A-16.2.

Next, plaintiffs maintain they suffered an ascertainable loss from defendant's unlawful conduct. To establish an ascertainable loss, plaintiffs must "demonstrate a loss attributable to conduct made unlawful by the CFA." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 246 (2005) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473 (1988)). The loss must be "'quantifiable or measurable,' not 'hypothetical or illusory.'" D'Agostino, 216 N.J. at 185 (quoting Thiedemann, 183 N.J. at 248). In a case involving a home-improvement contract, the cost of repairing damages resulting from a defendant's unlawful practices may constitute the appropriate measure of

a plaintiff's ascertainable loss. See, e.g., Cox v. Sears Roebuck & Co., 138 N.J. 2, 22–24 (1994) (concluding that the plaintiff's loss "amounted to the cost of repairing" damages resulting from the defendant's unlawful practices).

Here, plaintiffs presented uncontroverted evidence that they paid substitute contractors to complete the work and repair damage defendant caused. That is sufficient to establish an ascertainable loss within the meaning of the CFA.

Finally, plaintiffs are required to demonstrate "a causal relationship between the [defendant's] unlawful conduct and [their] ascertainable loss." Schering-Plough Corp., 367 N.J. Super. at 12–13 (App. Div. 2003). Our review of the record leads us to conclude that there was a causal relationship between the violations of the CFA and the ascertainable loss. Had defendant complied with the CFA, plaintiffs would not have had to pay substitute contractors to repair the damage defendant caused.

V.

We hold that plaintiffs have proven all the requisite elements of their consumer-fraud claim. Accordingly, we exercise our original jurisdiction to award treble damages of $15,000, which is the jurisdictional limit of the Special Civil Part. See Nieves v. Baran, 164 N.J. Super. 86, 91–92 (App. Div. 1978)

A-1089-18T4

(holding that the jurisdictional limit under the predecessor to the Special Civil Part applies to treble damages under the CFA); R. 6:1-2(c) (deeming waived any amount recoverable on a claim in excess of the jurisdictional limit of the Special Civil Part). We also hold pursuant to the fee-shifting provision of the CFA (N.J.S.A. 56:8-19) that plaintiffs are entitled to reasonable attorney fees. See Delta Funding Corp. v. Harris, 189 N.J. 28, 41 (2006) ("An award of attorney's fees and costs to prevailing plaintiffs is mandatory under [the CFA]."). That award is not subject to the $15,000 jurisdictional limit. See Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 144 (1999) ("[C]ounsel fees awarded under the [CFA] . . . are excluded from the calculation of the jurisdictional limit of the Special Civil Part.").

We remand the matter to the trial court for entry of a judgment in favor of plaintiffs of $15,000 and a reasonable amount of attorneys' fees pursuant to Rule 4:42-9.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1089-18T4